Andron v. Secretary Department of Health and Human Services Good morning. Good morning, Your Honors. May it please the Court, Dave Leger, Amicus Counsel on behalf of Dr. Handron. I'd like to reserve three minutes if I could. Oh, you may. You may. Let me say that you have a very sympathetic client. And if we were to assume that Judge Kugler was incorrect in requiring a physical presence and that the statute should be interpreted differently so that some form of advocacy would be required here, how do you, I'm having trouble figuring out how you still prevail in this case. Well, Your Honor, the question is whether or not the position of the United States was represented. And the question is, could the position of the United States ever be represented through the papers that are submitted to the administrative law judge alone? And my answer is... But my papers try to be more specific about that. I certainly will, Your Honor. Because that's something I think that... I certainly will. In this case, and veering from where the bright line could be, and let's talk about this case, and then I'll talk about my ideas about how it could work in other cases. In this case, the documentary support for the position of the agency, the position was that Dr. Hangen should repay $600,000, every penny Medicare had paid him over the course of seven years. The documentary support for that position was overwhelming. It comprised 25 boxes of medical records. It comprised a 64-page spreadsheet, which has 2,500 individual line items. But aren't those documents really merely evidence? Aren't they in and of themselves just evidence to be used somehow or another, to be the subject of inferences one way or another? But in and of themselves, how do those documents constitute advocacy? Well, Your Honor, they're not just evidence. They, in fact, the spreadsheet particularly for each and every one of the claims, advocates that a claim should be denied or not, and gives the particular reasons why the claim should be denied or not. But then you're saying in every adjudication of this type, at every hearing, when there has been a government position before that's laid out in detail, that that then constitutes that the position is represented by counsel or otherwise? No, Your Honor, I'm not, although I understand why you asked the question. Excuse me. Don't stray too far from the mic because we do listen to the tape. I apologize. I'm getting a little feedback, which I'm trying to adjust for that. I'm also trying to moderate my voice a little bit. Your Honor, no. Every adjudication will not be rendered an adversary adjudication if there is a flexible standard applied, as Congress intended, where courts will determine based on the facts and circumstances whether or not it was a true adversary proceeding. In this case, I submit it's an easy decision because the position of the agency was so Byzantine, was so convoluted, was so well represented in 25 boxes of documents, etc., etc. But were the boxes the position of the agency or they were his backup records, weren't they? No, Your Honor, they were records gathered by the agency from nursing homes. Dr. Handren treated patients at nursing homes and therefore created the medical records at the nursing homes.  25 bankers' boxes. So that was the government. Government compiled all of this. It wasn't the records that Handren brought to the proceeding. That's exactly correct, Your Honor. And the 25 bankers' boxes tied to the 64-page spreadsheet. Were they the backup for the 64-page determination spreadsheet? Yes, they were, Your Honor. So let me try to explain this. How's that advocacy? Again, why is that not just evidence? Your Honor, it's not evidence because the spreadsheet itself advocates the position. You should deny this claim because of Reason Codes 2, 3, and 4, and then you go to the index of Reason Codes and Reason 2 says, you know, the documentation doesn't meet this requirement and 3 says it doesn't meet this requirement. So you're saying that the position would be represented by counsel or otherwise only if the represented piece is based upon the heft of the position? In other words, what if it had been a two-page spreadsheet and two boxes and it was a one-page conclusion and that was before the ALJ and he looked at that and listened to Dr. Handren and said, okay, I reverse. Well, then is your argument that that, too, would mean that the position was represented? Where are you drawing? I'm trying to draw a line here. Your Honor, yes, I am. And I think that the Lane decision that I cite in our briefs, the North Dakota District Court case, actually does this quite well. In Lane, the court was presented with a hearing where it wasn't a Medicare hearing, it was a Farmers Home Administration hearing, but nobody entered an appearance on behalf of the government. The petitioner who provided it. But there was some testimony, wasn't there? There was some testimony, Your Honor, but if you read the opinion, very clearly the judge says this was an adversary adjudication for two separate reasons. Reason number one is that the support, the underlying reason for the agency's decision is encompassed by an OGC, an Office of General Counsel opinion that was examined by the court. I'll get the exact quote. It was extensively and critically reviewed by the NAD hearing officer and the district court noted that this opinion was far from a procedural, technical step in the process. It was at the heart of the underlying action. Now, what the Lane court also does is distinguishes a case where a document is not sufficient to create an adversary proceeding. And it's a case that Apley cites here, Raul V. Sullivan. In Raul V. Sullivan, the petitioner pointed to a letter received from counsel to the Social Security Administration. The letter didn't form the basis of the underlying decision by the investigative panel in that case. It was tangentially involved in it at best. And what the Lane court does is exactly what I think Congress wanted done in coming up with a flexible as opposed to a bright line standard, which is to look and say, under all the facts and circumstances, was the agency's position represented in the ALJ proceeding? And in Lane it was. In Raul it wasn't. Well, but for a position to have been represented, a position has to have been taken or staked out prior to the hearing. Well, Your Honor. So how do we go about crafting some limiting rule that looks at that pre-hearing activity that clearly is a step or maybe the step in turning the ultimate proceeding into one of an adversarial nature? Your Honor, I have two answers to that. First is clearly Judge Kugler and the appellee would prefer a bright line rule that wouldn't require this line drawing. And I will go so far, just speaking for myself, as to say the bright line rule crafted by Judge Kugler seems to have no support in the plain text of the authority. So Congress left the judges in a pickle trying to draw a difficult line. But we may have to do that. Well, I'm here to tell you I'm leaving them at least in a cucumber because I don't have a great answer to your question. I'll do my best. But it can't be, obviously, you just didn't get what you wanted. Absolutely, without a doubt, Your Honor. And that's the potential reach of this. Without a doubt. We don't craft some kind of limiting rule. The vast majority of appeals, I know appellee talks about Social Security Administration appeals, and there's a huge number of those appeals by individual claimants. And whatever rule is crafted would not touch those cases except in the most extreme circumstances. In cases where you have a provider appeal, where what's at stake is seven years of payments and 2,500 individual claims and 25 banker's boxes, what the rule that's crafted would be such that a judge could look at that and say, oh, Handren had to hire a lawyer. Handren had to hire an expert. The ALJ took 18 months to bull through the position of the agency. We asked for this appeal, and it wasn't. We actually didn't have the two-day hearing. The two days of live testimony until approximately 16 or 17 months later, and then a telephonic hearing. And so the rule that is drafted clearly, Handren, we will fit on the other side of the rule. Also, in this type of situation, the government had the burden, whereas in the Social Security situation, it's more that the claimant is moving forward. I mean, I think that might be a distinguishing feature. I don't know. Well, Your Honor, when we appeared at that, and Judge Smith, to your point about staking out a position, make no doubt about it. The agency had staked out a position. Handren, you owe us $604,000. Well, but there's a problem, at least when you only go that far, because that to me is merely a restatement of my last question to you, which is Dr. Handren just simply didn't get a good result. That can't be the answer. And it is not the answer, Your Honor. There is one other important distinguishment, perhaps, in this case, that I want to make sure I touch on. It's only been since 2006 that HHS's own, CMS's own regulations, have allowed it to participate in these types of proceedings. All of the legislative history, I would argue, is awash, because this particular proceeding, an ALJ hearing of a provider appeal, has only existed since 1986. So Congress could have never contemplated this. They couldn't have been speaking to this proceeding. Excuse me. Roberto, put the green light back on. It's only been since 2006 that HHS, or CMS, I'm sorry, has the option of participating. Now, in this case, the ALJ asked for participation from the carrier. It wrote and it said, I want you to participate. I want testimony and evidence on the statistical extrapolation. That gave HHS or CMS a decision point, the carrier a decision point. We can either participate by fully participating, enter an appearance, and, you know, ho-hog be a participant, or we can participate by providing an answer to the judge, or we can do nothing. It was absolutely in its can ability to do nothing, and that couldn't be held against it. In this case, CMS took the middle ground, decided to participate by providing additional information concerning and supporting and laying out its position that the audited results should then be Wait a minute. It did provide additional information for the hearing? It did, Your Honor. That's without dispute. And what was the nature of that? It's 50 pages of statistical explanation as to why the position of the agency that the audited results should be extrapolated over the entire universe. It supported that argument. Was this then used by the expert who was appointed by the ALJ? I believe it was assessed by the expert that was appointed by the ALJ. Because the extrapolation was, as a matter of methodology and a matter of fact, the big issue here. It drove hundreds of dollars. Exactly right, Your Honor. It quadrupled the dollars at stake, and ultimately it was determined by the ALJ that it was inappropriate to extrapolate. So your argument would be that by providing the additional 50 pages, its position was represented or otherwise? Yes, Your Honor. If it had done absolutely nothing? It would have a much stronger argument that it did not represent its position. Because there has to be a difference between represent and participate, because there's a specific regulation on participate. Yes, Your Honor. So represent has to be something a little bit less. Thank you for saying that. It's in my notes. I forgot to. No, I would think that just because they don't have to participate, but if they represent it. So it was at that point in time that the carrier slash agency, whichever the actor, the identity of the actor was at that time, chose to accept the invitation of the ALJ, that this proceeding was transposed into something of an adversarial nature? Your Honor, we took another step towards adversary proceeding at that point. I hesitate to suggest that be a bright line. I don't believe Congress intended a bright line. And so what the court has. Well, if it's not a bright line, was it the critical factor and point in this case? That's what I'm asking. Your Honor, it certainly is to the extent that it will distinguish this case, and getting back to your question, Judge Rendell, it will distinguish this case from the vast majority of other cases that won't feature that. It does nothing. Exactly right. And it's completely within the agency's determination. It can decide what it wants to do, Anything else you want to tell us? Your Honor. Let me go back. What do we make of the model rule that says have to appear? Do we owe any deference to that? Well, Your Honor, the model rule and then the CMS regulation that springs from the model rule very clearly reinterprets what Congress said. It says somebody has to both enter an appearance and participate. Congress didn't say that. Now, I read the CMS regulation as having a safety valve built into it. Specifically, it's 13.3a that sets forth what I consider to be an inappropriate heightened standard for adversary adjudication. Someone has to enter an appearance and participate. If the court were to say, that ends the equation, adversary proceeding equals enter appearance and participate, I would suggest that that would be an inappropriate deference to CMS, because they're tramping on Congress at that point. But 13.3b, as such things are somewhat convoluted, but there's two sentences that talk about specific types of proceedings that will be covered by these rules. We are not, we clearly don't fit into sentence one. We do not fit into sentence two. And then sentence three says, if a proceeding is not covered under either of the two previous sentences, a party may file a fee application and may argue that the act covers the proceeding. I view that as a safety valve, and given that it's a safety valve, I believe the regulation can be deferred to, doesn't tramp on Congress, and yet it doesn't put me out of court here. Any other questions? We'll have you back on rebuttal. Thank you, Your Honor. Thank you very much, Mr. Legate. Ms. Park? Good morning. Good morning. May I please the court? My name is Rachel Park, and I represent the United States Department of Health and Human Services. The district court's decision in this case was correct. It dismissed the case, finding it inapplicable because the ANJ hearing, in which appellant challenged a Medicare overpayment determination, was not an adversary adjudication within the meaning of statute, and that the government did not appear nor participate in the hearing. So you're saying that the department's position is that a person has to appear, whether it's counsel or an employee, or someone has to be at the hearing from the agency or else it isn't represented? That's correct. Someone has to be there, and someone has to advocate on behalf of the government, which is what we believe Congress's intent in nature was. How do you read that into the words, the position would be represented by counsel or otherwise? It doesn't say that they have to participate in the proceeding, does it? Or otherwise is the term that we need to construe, isn't it? That's correct. Well, we believe that Judge Kugler had it correct. When you construe statutory language, you must do so not in isolation, not or otherwise as an open-ended basket that you throw everything into, but within the context of the words that it appears around, and or otherwise follows the words represented by counsel. The Eleventh Circuit Court of Appeals found in Pilgrim v. Morris that that means that the individual must represent the agency in a manner similar to that of counsel, and that is also why the district court found that represented coupled with by counsel suggests that the statute requires a certain level of advocacy. This court disposes of appeals all the time, including today, where all the advocacy was done on paperwork, and there was no hearing before this court, no proceeding held in the courtroom. Right. And presumably, and experience tells me, that's done elsewhere. Right. Why should we construe the term or otherwise? What sources, what textual sources or even experience would suggest that or otherwise requires an actual appearance in a tribunal? Well, first of all, I think we have to remember the context of this particular case. There was an ALJ hearing, and as the district court ruled. Excuse me, Ms. Parr. I'm having a little trouble hearing. Am I too close? Back away just a little bit. That's it. Thanks. There was an ALJ hearing here. There wasn't, this wasn't a case that was decided on the record, and that's another scenario. Whether or not the agency could be represented by counsel in that particular situation is a different question. But in this case, there was a hearing, and nobody on behalf of the government appeared. The model rules developed by the Administrative Conference of the United States, which are subject to deference under SCAFAR, which is a decision of this circuit, define. That would be Skidmore deference, would it not? Yes. Defines an adversary adjudication as one requiring both an entry of appearance and participation in the proceeding. I think we also have to. But then the concept of participation that the regulations, regulations have a specific provision for participation. That's surplusage, is it not? If it has to be, you know, if representation means participation. The two aren't really the same, are they? The two are not the same, and that's why in CMS's own regulations in 2005, when it first allowed for CMS to participate or invoke party status in these ALJ hearings, it made clear that participation and party status were not one and the same. Why should we let an agency define the conditions under which it has to fork over money to a litigant? Because we have to keep in mind that when CMS makes a decision whether to participate or to invoke party status, it's not doing it towards an eye, towards each liability as appellant contends. In CMS's rulemaking defining the appeals procedures, it explained that it determined that participation may be important in some cases to help facilitate resolution. As appellant stated, the Medicare program is a Byzantine complex program. And over the course of the years before 2005, what CMS has determined is that there are many appeals which could have been resolved had CMS interjected some guidance, you know, whether there be complex coverage determination or payment disputes. And that's why it allowed for participation, to really serve, to let CMS provide information, but not to serve as an advocate for the government. Wouldn't the rule that you espouse encourage the agencies to stake out a position prior to a hearing, that stage of the proceeding, and, in fact, go so far as to submit some kind of adversarial memorandum that sets out that position and yet not send someone to the hearing and thereby be able to say, not represented, wasn't truly an adversarial proceeding? Well, again, I think that it's important to remember that that did not happen in this case. I'm not asking about that. I'm not asking whether that's this case. You have espoused a rule here. You haven't, as far as I can see, placed any distance between yourself and Judge Kugler's rule. Right. And that is because we are bound by our own regulations. We follow HHS's EJID regulation that defines an adversary adjudication in that manner. I have to say that I think that the presumption that the government is somehow, you know, has some kind of ulterior motive is one that's misplaced. And I know it's peppered throughout Appellant's papers here, but, you know, in order to make a finding that an adversary adjudication occurred in this case because there may be a scenario whereby the government may ask for an opinion of its counsel, as you stated, put it in writing, and then try to sneak it into the administrative appeals process, I don't think that that's a reasonable basis under which to interpret the EJID statute in this manner. You don't sneak it at all. You just send it, and you don't send anybody to represent you at the hearing. By the same token, it seems unwarranted to say that because an individual is physically present at the hearing, that that makes it adversarial when what we have clearly before the ALJ is mounds of adversarial documentation, and it puts the doctor, whether somebody stands there like a puppet or not, that the problem that the EJID was intended to resolve persists for the doctor, whether somebody from the agency is standing there or not. Well, can I make two points in response to that? The first is, as the Eleventh Circuit explained in Paul Green, it's not simply the presence of an individual, because I don't know if you recall, but in that Eleventh Circuit Court of Appeals case, the immigration official who conducted the interview was not deemed to be in the role of an advocate for the government. So it's not simply the presence of a live person, but it's what that person is doing in the context of the proceedings. So you're saying the person, there is some level of advocacy that has to be, they can't just say we stand on our 64-page spreadsheet in these boxes and sit down? Well, there has to be, and this is consistent with CMS's regulations, there has to be something apart from CMS's notion of participation in an effort to, you know, edify all the parties to the ALJ hearing. If CMS invokes party status and then, you know, elects to say everything's in the record and we think it's clear and sits down, then that would be probably considered advocacy. Well, what about the submission here of the 50 pages when asked to participate and CMS says, okay, we're going to participate here. Here's our 50 pages. Yes, I want to respond to that. When the ALJ requested, this is, again, something that is mischaracterized in the papers. Appellant would have this core belief that the ALJ requested CMS to participate as an advocate to decipher, and I think these are the words that were used, the voluminous mountains of documents. That's not the case. The ALJ requested specific information on the statistical methodology used to calculate the overpayment. This is, as you alluded to earlier, factual information, factual evidence. There's a certain methodology that CMS uses to calculate these overpayments. It's contained in our guidance manuals, et cetera. So CMS's contractor provided that information well over a year before the hearing. I want to get to the documents that appellant repeatedly refers to. He says it's not that the agency's position was written down because if that was the case, then every single adjudication would fall within the gamut of EJA. He says, in this case, it was extensively documented. It was voluminously documented. It was mountains of documents. We have 25 banker boxes of records. We have a 64-page spreadsheet. Let me remind the court that these documents, which are not in the record here, are not created by the government. These are factual-based documents. What CMS does is when it looks at a provider and tries to make a determination as to whether or not Medicare has overpaid that provider, it requests medical records of the beneficiaries, and it reviews those medical records to see if the documentation requirements meet the requirements to authorize payment for the services provided. So 25 boxes of documents are boxes of documents of the beneficiaries, presumably created by the provider. The 64-page spreadsheet is simply the determination made by the auditor as to whether or not each particular claim meets the requirements. So what appellant's position would end up resulting in is a government's audit that is documented well would fall within EJA, but a government's case that is not documented well would not? Well, I think it's a fully presented position. I mean, we do know that the position that's talked about in the statute is not just what's presented at the hearing, but what the act that has led up to it, which would be this spreadsheet. And the question is whether that position is represented. Now, you could say, well, it obviously was represented because looking at the ALJ's opinion here, that's all he did. He looked at that. I mean, not all he did, but that formed the basis for the adversary proceeding that was before him. The government says X, and the doctor says Y, and I brought this expert that says this, and therefore I find. Well, if it is well-documented and well-reasoned, and forms the basis for the ALJ's reasoning, you might say, well, obviously the government's position was represented because the ALJ didn't pull this adversarial, didn't reach its conclusion out of whole cloth. It clearly had a position of the government on one side and a position of the doctor. Well, I think you should remember the ALJ proceeding in this case consisted not just of these documents, but also appellant's counsel, who's been counsel for appellants since 2001. It included this appellant's expert. So to say that there was an adversary proceeding isn't really a fair reflection of what happened. Although I wonder, going back to the EHA and the language that Congress used, they said adversary proceeding. We're not talking about rulemaking or other administrative proceedings. We're really talking about when someone has to go out of their way and fight City Hall, if you will, and the threshold issue is, was the position represented? And only then do we get to the issue of, was the government's position substantially justified or not? But the statute says the position of the government, was it represented by counsel or otherwise? It doesn't say was the government... Which means it doesn't have to be a legal position. Well, I mean, you have to define otherwise within the context of representation by counsel. I don't think it means representation by... I don't think a reasonable construction could be representation by counsel or Bozo the Clown or in any other way. Bozo appears and puts forth a 64-page spreadsheet and says to the... Right, kudos to Bozo, right. Says to the ALJ, this is the government's position. If you look at the legislative history, they continually refer to advocacy. They continue to refer to litigation. They continue to refer to litigation adversaries. They say, in fact, the social security administrative proceedings under the Social Security Act are not adversarial proceedings. However, if in fact the secretary chooses to appear, if the secretary makes a unilateral decision to appear, that would become an adversarial decision. Congress clearly had in mind the scenario where the agency makes a decision to appear or not to appear. And as a consequence, that affects each eligibility. But there are other reasons at play in the government's decision to appear or not appear in a proceeding. Would you admit that social security proceedings are more inquisitorial than adversarial? And that that line seems to have been drawn in the cases. Is this basically an investigative or inquisitorial proceeding as compared to one where people are actually taking sides? I don't, I'm not familiar with the social security proceedings, but I know that there are many Medicare appeals which are, that merely form informational sessions. Because there's a lot of, you know, lack of information about Medicare's very complex payment rules. The other thing we have to keep in mind, I think, is that when Congress passed EJA, it did so with a very clear eye on costs. It repeatedly stated that the reason why it considered administrative proceedings under the Social Security Act, which includes Medicare, Medicare appears under Title 18 of the Social Security Act, is because of its concern about costs. So it enacted EJA initially as a three-year statute with a sunset provision, and it also directed the administrative conference to report annually on the fiscal impact of the legislation. What this argument of appellant would do is it would make every single Medicare overpayment determination that's ironically well substantiated subject to EJA. That is something that Congress never had in mind. Well, only if the government's position was substantially unjustified, though. Once you get through, I mean, this is only the first step, saying, okay, it's adversarial. Then you really look at the heart of the matter, and, you know, if Hendron had not been successful,  you might even find that the government, you know, was justified, even though the ALJ didn't find it. But as you know, Your Honor, I mean, there are a lot of, you know, the fact that these, all these cases before that were not under EJA for the last 29 years suddenly become subject to EJA. That in itself invokes unimaginable amount of litigation and costs to the government, whether or not the government's position was ultimately found to be substantially justified or not. Let's go, let me go back to the regulation a bit. And you address this in your reply brief, and that's 13.3B, which your opponent characterizes as a safety valve here. Why shouldn't we follow his view of section, subsection B in this matter? The reason is because subsection B addresses what proceedings are considered to be adjudications under 5 U.S.C. 554, the Administrative Procedures Act. That's what this paragraph is intended to address. We have already conceded that this ALJ proceeding constitutes a 5 U.S.C. 554 adjudication. Moreover, even to the extent that, and assuming you're looking at the last sentence or the third sentence of the provision, even assuming the provision was applicable, all it allows an applicant to do is file an application so that a determination can be made as to whether or not the adjudication was in fact a 554 adjudication. It does not remove the requirement that there be an adversary adjudication, that there be an agency representative who enters an appearance and participates in the proceeding. Any other questions? Good. Thank you very much. Mr. Lecce? Yes, thank you, Your Honor. I'd just like to make a couple of points. First, counsel mentioned that the voluminous documents are not in the record from the district court. And while she's right, I would note that the docket entries from the Administrative Law Judge hearing are in the record, and they helpfully list the document as well as the number of pages associated with it. And that's at A82 through A94, I believe. 92, I'm sorry. On that docket, in addition to the documents we've already discussed, are additional entries for 300 pages of carrier procedural documents. And that's item number 32 on A84. And 604 pages of carrier legal research. And that's item 33 on page A84. So not only was their position represented, they didn't have page limits like we do in this court. And we're able to flood them with 1,000 pages of additional documentation that it thought supported its position. And the fact that those documents aren't physically at the district court, I believe doesn't matter, because the fact that they were at the Administrative Law Judge proceeding and used by the ALJ is shown by the fact they're on the docket. What was presented in response to the inquiry by the ALJ? Your colleague said it was pretty much, you know, I need to understand this, give me the methodology. Your Honor, I believe my colleague is correct in that point. I have no indication that those documents were particularly requested. As to the request for participation by and the additional participation by CMS, those documents are at docket number 36 on page A84, that's the request, and docket number 42 on A85, that's the response. Now my colleague's exactly right that I mischaracterized the nature of what was requested and what was provided, and I didn't do that with any malice beforehand. I had never seen those documents. The first time I saw those documents was when my colleague sent them to me and said, hey, you misrepresented those documents. What we've done, Your Honor, since the content of those documents we're arguing about is relevant to this appeal, even though the documents themselves were not part of the record below, I have filed a Rule 10 e-motion attaching those documents and asking that the court put them into the record, because it seems appropriate to me that if both side is arguing about what's in those documents, that the documents themselves, it's like a best evidence kind of notion, the documents themselves be included. The fact that they're on the docket, which is in the record, I think is sufficient to allow them into the record at this point. And I do, on the docket, it's a motion by me to have those documents allowed into the record. On which docket? Is that before us? Yes, Your Honor. That motion's outstanding as we speak. Now, Your Honor, Judge Smith, you raised the prospect that for the possibility of gamesmanship. If the agency were to send in its position papers and then not come and not participate in the proceeding, and isn't that, wouldn't that be a bad thing in essence? And I want to point out that in Appley's the game, the system, that was a loophole that was closed by the court, I believe in 1986, not by this court. And that was the situation where the agency took a whole bunch of positions pre-ALJ hearing level, and then honed their positions at the ALJ level, and then would argue, you don't get paid under EGIP because our position's substantially justified. And Congress went in and redefined, or I shouldn't say redefined, defined the phrase, position of the agency to include what came before, to stop that instance of gamesmanship. And I'm not saying that they necessarily gamed the system here, although I have argued that in the papers and I believe it. I'm saying that that is, if you accept this interpretation, that they have this binary switch. I know when EGIP's going to apply, because if I show up it does, and if I don't it doesn't. Then you create a system where it can be gamed that way. Although monetarily they lost a lot more, arguably, by not showing up here. Although maybe they weren't going to convince the ALJ, but they run the risk that if they're not represented and don't advocate that the ALJ's going to find its own way. I agree, Your Honor, although for 20 years now the ALJ's have, since 86 when ALJ's were first used in these proceedings, ALJ's have been in handling these appeals without CMS participation and believe me, the providers are not winning all the time. I'm sure Ms. Park, on your latter point, I'm sure Ms. Park would come back and say, well, the remedy is to go to Congress. Well, but I agree, but I think it's they that have to go to Congress. If they want the bright line, they have to ask Congress to give it to them. It's not appropriate for them to simply pass a regulation and say, okay, a bright line exists where there is no bright line. Convenient? Yeah. Acceptable? Appropriate? No. And that's all, Your Honors. Good. Any further questions? Good. The case was extremely well argued. Thank you, Mr. LeJay, for participating in this and we thank Ms. Park as well. Thank you very much, Your Honor. Very well briefed. On behalf of Dr. Handren, who's here, thank you very much. Good. The case was very well briefed. We will take the matter under advisement.